All right, our next case this morning is United States v. Tapaha. Number 17-2104. Counsel? Good morning. May it please the Court. I'm Justine Fox-Young for arguing for the appellant Cornelia Tapaha. This appeal tests a defendant's right to put on a self-defense case pursuant to the Fifth and Sixth Amendments. That is, the defendant's right to present her version of the facts alongside the government's version for the jury to consider. That is, the defendant's right to testify as to those facts so that the jury may consider them and weigh her credibility before making a determination on self-defense. In this case, the district court arbitrarily denied that right. The district court deprived the jury of the opportunity to assess both versions of the case. Well, not completely. The judge did allow in some of the evidence three instances of conduct. So we're not talking about a total absence of evidence, are we? It is not a total deprivation, Your Honor. However, the three instances that the court let in were perhaps the least probative of the pattern of violence and escalating violence that formed the basis of the defendant's theory. But they were some of the more specific instances, though, weren't they? Well, in fact, they – I would characterize them as the least probative because while specific, and the others that were proffered were also specific, they were not close in time. The other, the second, didn't even involve, directly involve Ms. Tapaha. It involved violence to her brother, and she was present. And the third did involve violence to her as well. What is significant, though, is what was excluded. And what was excluded was significant from all three of the witnesses. The defendant, Mr. Yazni, the victim, and the defendant's sister, Ms. Tamara Tapaha. Counsel proffered evidence concerning specific instances from each of them. And the most probative, Your Honor, I would say occurred approximately two months prior to the incident. And this is in the record from pages 842 to 846. This is in the spring. The incident happens in July 2015. Two months prior, Ms. Tapaha is driving the same vehicle that she drove on the day of the incident, the Lancer, and Mr. Yazni is outside the vehicle. That day, just prior, he strikes her. He cuts her face. He inflicts violence on her. And then he proceeds to get a metal pipe, which he uses to smash out the headlights of the vehicle. She's in the car. After that time, he gets cinder blocks and breaks open the windows of the vehicle. And she flees. She flees just before that happens. This is in her mind on July 8, 2015, when she strikes him with her vehicle. In addition, specific recollections, specific instances were proffered from the defendant. She testified in her proffer that in the six to seven months prior to this incident, weekly she was beaten by Mr. Yazni, causing bruising, causing cuts. And while she didn't say it was on a Monday or it was on a Wednesday, she had a specific recollection of precisely what had happened. So did her sister. Let me ask you how far you would press this argument. Is it your position that every single one of these instances that was proffered was required to be admitted under the Fifth and Sixth Amendments? I think there is an outer limit. There is an outer contour to it. But I will tell the Court. But what is that outer limit? Well, first of all, it can't be cumulative. And it can't be. One of the things the Court was concerned about is that if you open the door to every instance that you wish to have presented, that you're dealing with cumulative evidence, it's going to take up time. I mean, these are specific factors in the rule that courts are told to consider in terms of admitting this type of evidence. So why wasn't that a legitimate concern for the Court? Well, it is a legitimate concern, and it's legitimate under Montelongo. But just for context, I'll tell the Court the entire duration of the proffers from the three witnesses was less than an hour and a half. And the evidence was not cumulative. But more importantly, the evidence – Well, presenting a proffer and presenting evidence are not necessarily equal in time. But more importantly, Your Honor, the evidence that was presented the two months prior to the incident in question where Cornelia Tapaja's windows are stricken out, that is absolutely critical to understand both the subjective and objective components on July 8, 2015, when she says she has a reasonable fear that she's going to be hurt or killed. And so it is perhaps the most probative evidence. Clearly should have been let in. The Court arbitrarily excludes it. I want to back up and ask just a very basic question, because I want to make sure that I understand your argument. In your constitutional argument, you have a subheading, B. I think it starts on page 37. And you talk about that this is reverse Rule 609B evidence. Are you making a single constitutional claim, or are you also arguing that the exclusion of this other evidence of specific acts was a nonconstitutional misapplication of Rule 609B? Or is your argument about Rule 609B just part and parcel of your constitutional argument? We argue under Markey that the standard of review is de novo and make the constitutional argument under the Fifth and Sixth Amendments. Additionally, and I think it's – I don't have that page of the brief in front of me, but under – we understand that the constitutional right is still subject to the rules of evidence, and we argue that under Rule 404B and the reverse 404B standard, the Court should have allowed those instances of Mr. Yazzie's prior violence.  And so to answer your question, it's part and parcel of our constitutional argument. Okay. We make a second argument with respect to Ms. Tapaha's statements to law enforcement. Certainly. And that is not a constitutional argument. Right. Now – That's an abuse of discretion. Yes, Your Honor. But on your – so on your constitutional argument, I want to go back to your exchange with Judge Matheson. And that is that the district court specifically said in entertaining – or in addressing this proffer that I'm not going to go back to the entire five or six years of the entire relationship and get into every single act in which Cornelius said that she was abused. I'm going to get into the most specific acts, including attempted murder, pushing her into oncoming traffic. And he said, as I understand it, that this will avoid cumulative evidence. Now, you may say it's not cumulative. The district court seemed to think that it was cumulative. And so with regard to that part, I don't know that we can say that the district court abused his discretion in regarding this as cumulative or that it would open up – he also said that it would open up the trial to litigating the entirety of this five- or six-year relationship. And those seem to be classic illustrations of what a judge is supposed to do in exercising his or her discretion. First of all, Your Honor, it's a de novo standard, we argue, pursuant to the Markey case. Ms. Topper asserts that her constitutional rights were violated. Even if the court were to find that it's an abuse of discretion standard, we still posit that the district court's rulings with respect to the three instances, one of which was very old, three years prior, one which didn't directly involve Ms. Topper. You mean letting that in but not other stuff? And excluding the most probative evidence, the evidence that was most probative of the pattern of escalating violence, continued violence, violence involving the vehicle. Because, of course, the jury hears this case and hears that Ms. Topper is inside the vehicle. And her – the obstacle she has to overcome with the jury is how is she in reasonable fear when Mr. Yazzie is outside the vehicle and she is inside it. And moving away from the vehicle. And the reason she's in reasonable fear is because he has hurt her before. He has hurt her that day. He has stricken her. And he has previously gotten to her in the vehicle. He has busted the windows out of the vehicle. In addition, he – with proper his testimony, Mr. Yazzie testifies, he probably would have hurt her had she not stopped him. And that testimony doesn't come in. And that goes directly to the objective component. Now, the district court did not make specific findings with regard to this very probative evidence that was excluded. The district court said she wasn't going to let in nebulous testimony, wasn't going to let in cumulative testimony. But the testimony that was let in was entirely arbitrary and nearly random. Does it make any difference that in what she did that the – she initially was going to deny any evidence as I read the materials? And then she took a second thought at that. So maybe I better let in something. Yes, Your Honor. I believe she read the Toledo case, which Your Honor wrote. I'm familiar with it. And did give the self-defense instruction. And did let in these three instances. The problem with these three instances is that they gave the jury the impression that there were only three instances. And the defendant's case, the defendant's theory was that there was a pattern of violence, which was – Well, did they get into evidence, his abuse of her in the car on that day? Yes, that came in. And did her sister testify to that also? Yes. She did and her sister did. But all the most probative evidence of her fear and why she was afraid of him and the fact that he couldn't be stopped was excluded. And so while the court under Toledo, and if Toledo stands for anything, the court realized the court had to give that self-defense instruction, the court then proceeded to gut the defense theory. And so the jury was denied the opportunity to hear that factual basis and to hear the argument as to why, why somebody who's inside a car and strikes somebody at three to five miles an hour was reasonably in fear. Counsel, a couple minutes ago you referred to the three instances that did come in as absolutely arbitrary and random. Didn't the court explain why it let in those three instances? The court articulated – Do you really want to say that it was absolutely arbitrary and random? Well, I'll put it this way, Your Honor. If the court had asked counsel what three instances are most probative of your defense theory, if the jury's only going to hear three, I'm only going to spend 15 minutes on this, which do you want, those would have been near the bottom of the list. Well, I assume that argument got made. I mean, the proffers are made almost every day of trial. Well, the argument – Wasn't there an argument that, well, we'd like these because these are the ones we think are most probative? We made that argument, but the court – and I'll tell you, under Montelongo, and this is why I say it's arbitrary and random, they're not the most proximate in time and they're not the most similar. In fact, they're the least similar. If you look at the Talamante case and what was excluded – it's if the judge just said, let's take three and put them in. I mean, the record shows that there was some thought about which ones would be presented, wasn't there? There was, Your Honor. And the court found that she identified a specific recollection and specific dates and let those in. I guess when I say the decision was arbitrary, it is arbitrary when you look at how much evidence was excluded that detailed the six to seven months just prior to the incident and the violence and the specific recollection of that violence from all three witnesses. Okay. I understand your point. We haven't really talked about the statements to the officers. Did you forfeit your confrontation clause argument? No, Your Honor. We don't believe that we have. Did you make it in district court? We argue that we should be able to cross-examine Mr. Yazzie. Did you make a confrontation clause argument in district court? No, because we were permitted to cross-examine him and we made the proper – pursuant to the Fifth and Sixth Amendments, I don't believe we specifically made it outside the right to present a defense. Did you raise a 106 completion issue? With respect to the statement that they testified to? Without the site, I can't tell you for sure, but I believe we did raise a rule of completeness argument. Well, you didn't raise it in your brief here. Here in the brief, we raised impeachment and the right to present a prior consistent statement. And I think under the rule of completeness, they should have come in as well. Well, you don't argue rule of completeness. I understand, Your Honor. And with respect to those statements, if you – By the way, just let me throw this question out and then you can – how was Mr. Yazzie a witness against Ms. Topaha when she called him to the stand and he wasn't hostile? Under the confrontation clause? Yes. Well, he – we were permitted to cross him. I think he was hostile, although I don't know if the Court made a specific finding in that regard. But we still argue that under the Fifth and Sixth Amendments – What's – I'm just curious. Have you got any authority that the confrontation clause applies in that circumstance? Where the defendant calls him? No. I have no specific case on that. Thank you. If you look at the government's closing and what they argued to the jury that Ms. Topaha committed these acts out of anger, it is all the more clear that the excluded statements that she made to law enforcement, that she was – that she had prior abuse. I understand that my – You can go ahead and conclude. Okay. That she had been abused previously and that she had had this longstanding pattern of escalating abuse from Mr. Yazzie. It's clear that the district court's exclusion absolutely gutted her self-defense case and hindered her from arguing that to the jury. Thank you. Thank you, counsel. May it please the Court. Counsel, my name is Marissa Ong and I'm an assistant United States attorney in Las Cruces, New Mexico. The appellant is arguing that her rights were violated  I would like to make a point of clarification The record completely belies that allegation. If you look at what the district court let in, the district court let in three specific instances of 404B evidence about Yazzie's prior violent conduct. So what does stabbing the brother have to do with his continual abuse of the defendant? Well, Your Honor, I believe that – I wouldn't want my brother stabbed either. Sure. I think that what the district court was articulating is that they found – the district court found that that instance, there was a specific recollection about the time that it had happened. Well, how specific do you have to be? If you know you've been beaten up every week, do you have to say at 1201 on January 3rd? No, Your Honor, of course not. But with regard to the allegation of the stabbing, I think the district court found it relevant as to her fear of what he was capable of on that date. But in addition to the three instances that the court let in, if you look at the record, during Ms. Tapaha's testimony, she testified numerous times that Yazzie always hit me in the face. This was an ongoing thing. And the judge specifically told the jury, whenever the witness says usually or always, disregard that, correct? That happened, I believe, the third time that the witness used the phrase always. The judge did instruct them on that specific instance. And don't we presume that the jurors followed the judge's instructions? That's correct, Your Honor. But I think if you read through the record, then the fact that she's repeated it, and the last time that she said it and there's an objection, the court was talking about that specific time that she referenced always. There's no doubt from reviewing the record in this case that the jury understood that this abuse was ongoing. But they didn't understand that he had knocked out the windows in her car and had broken her headlights and had attempted to get at her. And in this case, he was hitting the hood of the car. And he was giving her obscene gestures as he walked away. That's correct, Your Honor. There was no indication that he wasn't going to turn around and do that pipe and start breaking the windows again. So none of that evidence or the potential of it was permitted to be given to the jury. So first of all, the record, there was inconsistent testimony about whether or not Yazzie was walking away or whether or not he was banging on the hood of the car. Initially, what Ms. Tapaha told law enforcement. Is this on the day? Is this the incident itself, or is this the incident two months before? No, it is the day. The day of. Yes. So let me just first address the Court's question about the 404B evidence. What the district court found is that on the day in question, there had been no testimony that Yazzie had actually broken any car windows. And so the Court found that that instance was not specific enough. When Ms. Tapaha initially gives her statement to law enforcement, she doesn't say anything about the fact that he's banging on the car, that he's threatening her. In fact, what she tells them is he gets out of the car and he's walking away. And that's when she hits him. On the day of trial, her testimony changes. And she's fully allowed to elaborate on her self-defense claim. And she says that he gets out of the car, that she hits him, and then he starts banging on the hood of the car. He banged on the hood before she hit him, I think. And then he walked away after he did that. So the record, I mean, if you go through her testimony, it's not exactly clear. I think she kind of goes back and forth. On some points, she says that she hits him first, and then he starts banging. And then when she's pressed on it at other points, she says that he's banging on the hood of the car. But this all happens while she's in control of the vehicle and she's hitting him. And with regard to her self-defense claim, what's important is whether or not she felt that she was in immediate danger at that time. He's outside of the car. She's in control of the vehicle. Isn't the whole point that he's in the car or he's out of the car, she's in the car, and she's got evidence of things that happened the same way when she was in the car and he was out of the car and what he did to her when he was out of the car trying to get in to get her. Isn't that sort of critical? That could be one similarity, but I think that the district judge, it has broad discretion in what it lets in, and it found that it wasn't similar because there was no instance on the July 8th, 2015 incident, there was no allegation that Yazzie had ever broken any windows. There was no physical evidence that that had occurred. And so when the district judge excluded that, that's what the district judge found, that there wasn't enough similarity. And I believe the district judge also excluded it under 403 grounds. And so if you look at what the judge let in, the judge did not limit Ms. Tapaha's testimony at all. Well, she did because she sustained the objection. Well, what I was trying to get at is the district judge did not limit Ms. Tapaha's testimony at all with regard to what happened on July 8th, 2015. She was allowed to fully explain to the jury, hey, this is what happened, he had been hitting me, this is why I was afraid. Restricting to that day, doesn't that negate or cut out the reasonable fear that something else was about to happen based on what had happened shortly before? But the judge didn't just limit her testimony only to that date. She allowed other witnesses to testify about other acts of violence that Yazzie had inflicted on her. Well, two of them. One several years earlier, and one a little bit closer in time. And then the stabbing of the brother. Yes, so there were three instances that the judge specifically let in. And if you review the record with both Ms. Tamara's testimony, Mr. Yazzie's testimony, and Ms. Tapaha's testimony, there are allusions in all of their testimony to a lot of other abuse that was happening. It's true that the district court didn't let them go into specific detail about that. But it was clear to the jury, if you read the record, that these were not the only three instances of abuse that Ms. Tapaha had ever suffered at the hands of Yazzie. The jury knew that he was abusive. The jury knew the history of their past relationship. She was fully allowed to develop her self-defense theory about why she felt the need to use the force that she used. The jury was given the self-defense instruction, and I believe that they weighed the evidence, and they just didn't find certain portions of her case credible. And that's why they came out with the verdict that they did. Can I ask you a hypothetical question? Let's say that the evidence in question on July 8th or whatever day it was came in just as it did in this case. But in my hypothetical question, Mr. Yazzie had, let's say, 45 particular instances within a 12-month period of the day in question. One of the 45 examples was he pulled a knife on her. Another example was that she was driving the vehicle, and he was slugging her, and he got out and started walking away and returned to the vehicle and got in and beat her senseless. And the third example is that they were also in a vehicle driving, got into a conflict, and he got out. She started to drive away, and he jumped in the vehicle and threw her out of the vehicle in the oncoming traffic. And let's say we have 42 other examples like that. At some point, isn't, particularly under de novo review, a question of, well, the judge lets in two or three examples, but does that really adequately protect the defendant's constitutional right to present a defense? And to make it more difficult is one of the more aggravating circumstances that make the self-defense theory difficult for the defendant in this case, and that is, as the prosecutor emphasized in closing argument, that he was moving away. Well, these other instances may make that less odd, that she would maybe feel the need to protect herself, even though Mr. Yazzie was moving away from the vehicle. At some point, don't we have to say letting in two or three examples really is not adequate to preserve the defendant's constitutional right to present a defense? Your Honor, that may be the case, but that's not the circumstance here. We don't have 45 different instances that were proffered to the court within the timeframe that the court is referencing. And with regard to her self-defense claim, she's in a vehicle which can be a deadly weapon. So in order for her to justifiably be able to use that vehicle against Yazzie, she has to have an immediate fear that he is about to inflict deadly force against her. She testified that she could see his hands. She testified on direct, oh, I didn't know if he had the wrench, but when she was pushed on cross-examination, she admitted that she could see his hands while he was banging on the front of the car and she could see that he didn't have a weapon with him. So in order for her to be able to justifiably, under the law, use that vehicle to hit him, he has to be coming at her with some sort of deadly force. And I think that what the jury understood is him just banging on the top of the car, it's not sufficient to get there. And the record wasn't even completely clear on that. What she initially told law enforcement, she never said anything about him banging on the front of the car, about him hitting her throughout the day. So that is all evidence that the jury was able to weigh in assessing her credibility and whether or not they believed that it was justifiable for her to hit him. So I believe that the record is clear. She was fully allowed to develop her self-defense claim. The judge did let in three specific instances that the court found were specific. There was a specific recollection. And the judge excluded the other instances on 403 grounds. And even though this is a review, the constitutional review is de novo. What the Old Bear case tells us is that in order for an evidentiary ruling infringes on a defendant's due process rights only if the district court violates the federal rules of evidence. And then there, even if there's a violation, the defendant still has to prove materiality. If these other instances had been introduced, would they have exculpated her? Can I ask a question about materiality? Yes. Actually, two questions. Ms. Fox-Young repeatedly talked about the incident two months prior as the most probative. And I think there's been some discussion during your argument about comparing that with what happened on the day of the incident. But I think her comparison was to the other three instances that were allowed in. And I think her argument is that the one that wasn't let in was much more probative than the other three. And that's a basis for the arbitrary claim. Can you – you've done the comparison with the incident, but what's your response to comparing it to the three instances that actually were allowed? A probativeness comparison of the incident where he – Well, if I understand the argument, the argument is the judge let in the wrong – either the wrong instances or kept out one that was a lot more probative. And that that was arbitrary. Was it? Your Honor, I don't believe it was. I think that when the district court review – when – after Ms. Tapaha proffered the instance that they referenced where he punched out the windows, what the district court said is that she didn't find that instance to be similar enough, which is one of the things that the court is supposed to evaluate under a 404B analysis, because in this case, on July 8th, there was no allegation that he had actually punched out any of the windows here, and there was no physical evidence to support that. So I – Is that really the issue? Or is the issue that his temper was such that you – just because you were in the car, you couldn't say that you were free and clear of this person's wrath? Well, Your Honor, I think that the district court is supposed to go through a specific 404B analysis. And if the court finds that it's too remote, too temporally remote, then they can exclude it on those grounds. But stabbing her brother several years earlier was close in time. The district court, with regard to that, found that the recollection was specific, and that's why they let it in. But I think if you go – just, Judge Mathison, to answer your question, the district court is allowed to exclude 404B evidence on – if it's too temporally remote, if it's not similar enough, if it – and then under the probativeness gets to the 403 analysis. So even though it might have been probative, what the district court found is that it wasn't similar enough, and I think that that – the district court was well within its broad discretion to make that finding and exclude that instance. Thank you, counsel. And I see my time is up. It is. Thank you. Thank you for your argument. Thanks to both counsel for the arguments this morning. The case will be submitted, and counsel are excused.